1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ANDREW M. CHAMPOUX, | ) | Case No. CV 12-02134-JEM |
| Plaintiff, | ) | |
| | ) | MEMORANDUM OPINION AND ORDER |
| v. | ) | REVERSING DECISION OF |
| | ) | COMMISSIONER AND REMANDING |
| MICHAEL J. ASTRUE, | ) | FOR FURTHER PROCEEDINGS |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## PROCEEDINGS

On March 13, 2012, Andrew M. Champoux ("Plaintiff or Claimant") filed a complaint seeking review of the decision by the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for Social Security Disability Insurance benefits.  The Commissioner filed an Answer on June 25, 2012.  On September 21, 2012, the parties filed a Joint Stipulation ("JS").  The matter is now ready for decision.

Pursuant to 28 U.S.C. § 636(c), both parties consented to proceed before this Magistrate Judge.  After reviewing the pleadings, transcripts, and administrative record ("AR"), the Court concludes that the Commissioner's decision must be reversed and remanded in accordance with this Memorandum Opinion and Order and with law.

**BACKGROUND**

Plaintiff is a 44 year old male who applied for Social Security Disability Insurance benefits on October 19, 2009, alleging disability beginning October 26, 2008.  (AR 53.)  Plaintiff has not engaged in substantial gainful activity since October 26, 2008, the alleged onset date. (AR 55.)

Plaintiff's claim was denied initially on February 26, 2010.  (AR 53.)  Plaintiff filed a timely request for hearing, which was held before Administrative Law Judge ("ALJ") Joel B. Martinez on December 21, 2010, in Pasadena, California.  (AR 53.)  Claimant appeared and testified at the hearing, and was represented by counsel.  (AR 53.)  Vocational expert ("VE") Rheta King also appeared and testified at the hearing.  (AR 53.)  The ALJ issued an unfavorable decision on February 8, 2011.  (AR 53-64.)  The Appeals Council denied review on January 13, 2012. (AR 1-6.)

**DISPUTED ISSUES**

As reflected in the Joint Stipulation, Plaintiff raises the following disputed issues as the basis for reversal and remand:

1.    Whether the ALJ erred in rejecting the diagnostic and physical functional capacity assessments of treating physicians Metyas and Betts at step two.

2.    Whether the ALJ erred in rejecting the diagnostic and mental functional capacity assessments of treating psychiatrist Krasnova.

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the ALJ's decision to determine whether the ALJ's findings are supported by substantial evidence and free of legal error.  Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996); see also DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991) (ALJ's disability determination must be supported by substantial evidence and based on the proper legal standards).

Substantial evidence means "'more than a mere scintilla,' but less than a preponderance."  Saelee v. Chater, 94 F.3d 520, 521-22 (9th Cir. 1996) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  Substantial evidence is "such relevant evidence as a

1  reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at

2  401 (internal quotation marks and citation omitted).

3      This Court must review the record as a whole and consider adverse as well as

4  supporting evidence. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).  Where

5  evidence is susceptible to more than one rational interpretation, the ALJ's decision must be

6  upheld. Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

7  "However, a reviewing court must consider the entire record as a whole and may not affirm

8  simply by isolating a 'specific quantum of supporting evidence.'" Robbins, 466 F.3d at 882

9  (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)); see also Orn v. Astrue, 495

10 F.3d 625, 630 (9th Cir. 2007).

11                        **THE SEQUENTIAL EVALUATION**

12      The Social Security Act defines disability as the "inability to engage in any substantial

13 gainful activity by reason of any medically determinable physical or mental impairment which

14 can be expected to result in death or . . . can be expected to last for a continuous period of not

15 less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The Commissioner has

16 established a five-step sequential process to determine whether a claimant is disabled.  20

17 C.F.R. §§ 404.1520, 416.920.

18      The first step is to determine whether the claimant is presently engaging in substantial

19 gainful activity. Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).  If the claimant is engaging

20 in substantial gainful activity, disability benefits will be denied. Bowen v. Yuckert, 482 U.S. 137,

21 140 (1987).  Second, the ALJ must determine whether the claimant has a severe impairment or

22 combination of impairments. Parra, 481 F.3d at 746.  An impairment is not severe if it does not

23 significantly limit the claimant's ability to work. Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir.

24 1996).  Third, the ALJ must determine whether the impairment is listed, or equivalent to an

25 impairment listed, in 20 C.F.R. Pt. 404, Subpt. P, Appendix I of the regulations. Parra, 481 F.3d

26 at 746.  If the impediment meets or equals one of the listed impairments, the claimant is

27 presumptively disabled. Bowen v. Yuckert, 482 U.S. at 141.  Fourth, the ALJ must determine

28 whether the impairment prevents the claimant from doing past relevant work. Pinto v.

3

Massanari, 249 F.3d 840, 844-45 (9th Cir. 2001).  Before making the step four determination, the ALJ first must determine the claimant's residual functional capacity ("RFC").[1]  20 C.F.R. § 416.920(e).  The RFC must consider all of the claimant's impairments, including those that are not severe.  20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96-8p.  If the claimant cannot perform his or her past relevant work or has no past relevant work, the ALJ proceeds to the fifth step and must determine whether the impairment prevents the claimant from performing any other substantial gainful activity.  Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000).

The claimant bears the burden of proving steps one through four, consistent with the general rule that at all times the burden is on the claimant to establish his or her entitlement to benefits.  Parra, 481 F.3d at 746.  Once this prima facie case is established by the claimant, the burden shifts to the Commissioner to show that the claimant may perform other gainful activity.  Lounsbury v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006).  To support a finding that a claimant is not disabled at step five, the Commissioner must provide evidence demonstrating that other work exists in significant numbers in the national economy that the claimant can do, given his or her RFC, age, education, and work experience.  20 C.F.R. § 416.912(g).  If the Commissioner cannot meet this burden, then the claimant is disabled and entitled to benefits.  Id.

## THE ALJ DECISION

In this case, the ALJ determined at step one of the sequential process that Plaintiff has not engaged in substantial gainful activity since October 26, 2008, the alleged onset date.  (AR 55.)

At step two, the ALJ determined that Plaintiff has the following combination of medically determinable severe impairments: mild cardiomegaly, chronic obstructive pulmonary disease/asthma, obesity, and an adjustment disorder.  (AR 55.)

---

[1]  Residual functional capacity ("RFC") is what one "can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments.  (AR 55.)

The ALJ then found that the Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) with the following limitations:

> . . . can lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk (with normal breaks) for a total of two hours in an eight-hour workday, sit (with normal breaks) for a total of six hours in an eight-hour workday, can perform postural activities occasionally, cannot be exposed to concentrated dust, fumes, or gases, cannot be exposed to extreme temperatures, cannot climb ladders, ropes or scaffolds, cannot be around heights and hazards, and is limited to simple work.

(AR 55-56.)  In determining the above RFC, the ALJ made an adverse credibility finding which is not challenged here.  (AR 56.)

At step four, the ALJ found that Plaintiff is unable to perform any past relevant work as a truck driver helper, warehouse supervisor and the hybrid job of warehouse supervisor and motor vehicle dispatcher.  (AR 62.)  The ALJ, however, found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including microfilming document preparer, call out operator, and food and beverage order clerk.  (AR 62-63.)

Consequently, the ALJ concluded that Claimant is not disabled within the meaning of the Social Security Act.  (AR 64.)

## DISCUSSION

The ALJ decision must be reversed.  Notwithstanding an unchallenged adverse credibility finding, the ALJ did not properly consider the fibromyalgia medical evidence.  The ALJ also improperly relied on the opinion of a non-examining State review physician to reject the opinions and clinical findings of Plaintiff's treating physicians.  The ALJ's step two and RFC

findings are not supported by substantial evidence as to Plaintiff's fibromyalgia.  The ALJ's non-disability determination is not supported by substantial evidence nor free of legal error.

## I.      THE ALJ IMPROPERLY CONSIDERED THE FIBROMYALGIA EVIDENCE

Plaintiff is a veteran who has multiple physical and mental impairments, found or alleged to be severe.  When admitted to the West Los Angeles Veterans' Administration Medical Center ("VAMC"), he was taking Lyrica, Cymbalta and Vicodin for fibromyalgia and also was taking Paroxetine, Tramadol, Baclofen, Xanax, and ibuprofen prescribed by his psychiatrist.  (AR 117.) Plaintiff is taking or has taken other medications for various physical ailments.  (AR 383-84.)

### A.      Fibromyalgia

Fibromyalgia is "a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons ligaments, and other tissue."  Benecke v. Barnhart, 379 F.3d 587, 589 (9th Cir. 2004).  In Benecke, the Ninth Circuit determined that fibromyalgia can be disabling.  It described fibromyalgia as follows:

Benecke suffers from fibromyalgia, previously called fibrositis, a
rheumatic disease that causes inflammation of the fibrous connective tissue
components of muscles, tendons, ligaments, and other tissue.  *See, e.g.,*
*Lang v. Long-Term Disability Plan of Sponsor Applied Remote Tech, Inc.*,
125 F.3d 794, 796 (9th Cir. 1997); *Brosnahan v. Barnhart,* 336 F.3d 671,
672 n.1 (8th Cir. 2003).  Common symptoms, all of which Benecke
experiences, include chronic pain throughout the body, multiple tender
points, fatigue, stiffness, and a pattern of sleep disturbance that can
exacerbate the cycle of pain and fatigue associated with this disease.  *See*
*Brosnahan*, 336 F.3d at 672 n. 1; *Cline v. Sullivan*, 939 F.2d 560, 563 (8th
Cir. 1991).  Fibromyalgia's cause is unknown, there is no cure, and it is
poorly-understood within much of the medical community.  The disease is
diagnosed entirely on the basis of patients' reports of pain and other
symptoms.  The American College of Rheumatology issued a set of agreed-

1    upon diagnostic criteria in 1990, but to date there are no laboratory tests to

2    confirm the diagnosis.  *See Jordan v. Northrop Grumman Corp.*, 370 F.3d

3    869, 872 (9th Cir. 2004); *Brosnahan*, 336 F.3d at 672 n. 1.

4    Id. at 589-90; see also Harman v. Apfel, 211 F.3d 1172, 1179-81 (9th Cir. 2000) (reversing ALJ

5    decision denying benefits for fibromyalgia); Bunnell v. Sullivan, 947 F.2d 341, 347 (9th Cir.

6    1991) (upholding benefits for fibrositis, now known as fibromyalgia).

7    Jordan v. Northrop Grumman Corp. Welfare Benefit Plan, 370 F.3d 869, 877 (9th Cir.

8    2004) (overruled on other grounds by Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 970

9    (9th Cir. 2006) (en banc)), a case in which benefits were denied for fibromyalgia, recognized

10   that the accepted diagnostic test for fibromyalgia is that Plaintiff must have pain in 11 of 18

11   tender points.  See also Rollins v. Massanari, 261 F.3d 853, 855 (9th Cir. 2001).  Objective

12   tests such as myelograms are administered to rule out other diseases and alternative

13   explanations for the pain but do not establish the presence or absence of fibromyalgia.  Jordan,

14   370 F.3d at 873, 877.  It cannot be objectively proven.  Id. at 877.  The symptoms can be worse

15   at some times than others.  Id. at 873.  The Ninth Circuit recognizes fibromyalgia as a physical

16   rather than a mental disease.  Id.  The most appropriate specialty for evaluating fibromyalgia is

17   rheumatology.  Benecke, 379 F.3d at 594 n.4 ("[r]heumatology is the relevant specialty for

18   fibromyalgia").

19   **B.    The ALJ Failed To Make Step Two Findings**
     **       Regarding Fibromyalgia**

20

21        At step two of the five step sequential inquiry, the ALJ determines whether the claimant

22   has a medically severe impairment or combination of impairments.  Bowen, 482 U.S. at 140-41.

23   An impairment is not severe if it does not significantly limit the claimant's ability to work.

24   Smolen v. Chater, 80 F.3d at 1290.  The ALJ, however, must consider the combined effect of all

25   the claimant's impairments on his ability to function regardless of whether each alone was

26   sufficiently severe.  Id. Also, the ALJ must consider the claimant's subjective symptoms in

27   determining severity.  Id.

28

1    The step two inquiry is a de minimis screening device to dispose of groundless claims.

2    Bowen, 482 U.S. at 153-54.  An impairment or combination of impairments can be found non-

3    severe only if the evidence establishes a slight abnormality that has no more than a minimal

4    effect on an individual's ability to work.  Smolen, 80 F.3d at 1290; SSR 85-28; Yuckert v.

5    Bowen, 841 F.3d 303, 306 (9th Cir. 1988) (adopting SSR 85-88).

6    In this case, Dr. Randolph Betts, Plaintiff's treating physician, diagnosed fibromyalgia on

7    October 1, 2009.  (AR 554.)  Dr. Betts referred Plaintiff to a rheumatologist, Dr. Samy Metyas,

8    who examined Plaintiff in October 2009 (AR 541-2) and found Plaintiff positive on 18 of 18

9    tender points.  (AR 541.)  Lab testing ruled out Sjogren's disease.  (AR 541.)  Dr. Metyas

10   diagnosed severe fibromyalgia, recommended physical therapy, yoga and water therapy and

11   prescribed Cymbalta.  (AR 541.)  Dr. Metyas saw Plaintiff again in December 2009, reporting

12   that Plaintiff again was positive on 18 of 18 tender points.  (AR 595.)  Dr. Metyas saw Plaintiff a

13   third time on April 7, 2010, again reporting Plaintiff was positive on 18 of 18 tender points.  (AR

14   702.)  Dr. Metyas next saw Plaintiff again on October 20, 2010, reporting pain in 18 of 18 tender

15   points.  (AR 694.)  Dr. Metyas also completed a Fibromyalgia Questionnaire dated October 20,

16   2010, stating that Plaintiff is unable to go back to work and would miss  work more than three

17   days a month.  (AR 694-701.)  Dr. Betts submitted a letter dated December 14, 2010, opining

18   that Plaintiff is unable to work due to all his impairments, including his fibromyalgia.  (AR 707.)

19   VAMC assumed control of Plaintiff's care in September 2009 because Dr. Betts and

20   Dr. Metyas no longer took Plaintiff's insurance.  (AR 105, 168.)  Dr. Sheybani, his primary care

21   doctor, diagnosed fibromyalgia on September 8, 2009.  (AR 73.)  VAMC records repeatedly

22   accept and repeat the diagnosis of fibromyalgia.  More importantly, the VAMC conducted its

23   own tests and clinical examinations.   (AR 117-21.)  In September 2009, Dr. Schulz, whom the

24   ALJ decision does not mention, found Plaintiff positive for 16 of 18 tender points which along

25   with fatigue, sleep disturbance and depression/anxiety "are all consistent with fibromyalgia."

26   (AR 120.)  VAMC psychiatrist Dr. Krasnova attributed Plaintiff's panic attacks to severe pain

27   related to his fibromyalgia.  (AR 176.)

28

8

1   State reviewing physician Dr. Harar in a February 22, 2010, Physical Residual Functional

2   Capacity Assessment opined, "Given the paucity of significant physical findings, despite the +

3   trigger points, the RFC of sedentary appears medically reasonable with respiratory

4   precautions."  (AR 631.)  Dr. Harar who apparently is not a rheumatologist treated Plaintiff's

5   fibromyalgia as only an "alleged" impairment.  (AR 625.)  Dr. Harar did not provide any

6   explanation for her opinion, a critical omission in view of the standard diagnostic test for

7   fibromyalgia of pain in 11 of 18 tender points met here on several occasions by the

8   examinations of Dr. Metyas, Dr. Betts, and VAMC doctors.  Dr. Harar did not examine Plaintiff

9   and was not in a position to assess his credibility.  Dr. Harar's conclusory opinion that Plaintiff's

10   fibromyalgia is merely an alleged impairment, without any explanation, is an insufficient basis

11   by itself to conclude that Plaintiff has no fibromyalgia impairment.  Lester, 81 F.3d at 830-32

12   (non-examining physician's opinion "with nothing more" absent record evidence to support it

13   does not constitute substantial evidence).

14   One obvious error in the ALJ decision is, notwithstanding the repeated diagnoses of

15   fibromyalgia by numerous physicians, there is no step two finding at all that Plaintiff has or does

16   not have fibromyalgia and what its severity is.  If the ALJ believed there was insufficient

17   evidence of a fibromyalgia impairment, he should have said so and explained why.  If he was

18   accepting Dr. Harar's opinion as evidence of no impairment as seems likely, he should have

19   said so at step two.  Dr. Harar's opinion, however, is an insufficient basis for finding no

20   impairment in the absence of any explanation why numerous findings of pain in more than 11 of

21   18 trigger points do not establish an impairment.  Batson v. Comm'r, 359 F.3d 1190, 1195 n.3

22   (9th Cir. 2004) (ALJ may reject opinion that is brief, conclusory and unsupported by rationale or

23   objective medical evidence); Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 2004) (ALJ properly

24   rejected check box opinion without explanation or basis).

25   **C.    The ALJ Improperly Relied On The Opinion Of
         Dr. Harar, The State Reviewing Physician**

26

27   In determining Plaintiff's RFC, the ALJ relies on the opinion of Dr. Harar to reject the

28   opinions of Dr. Metyas and Dr. Betts regarding Plaintiff's fibromyalgia.  Plaintiff contends that as

a non-examining physician Dr. Harar's opinion does not constitute substantial evidence that can be used to reject the opinions of treating physicians.  The Court agrees.

### 1.   Relevant Federal Law

In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians:  (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining, or consulting, physicians).  See 20 C.F.R. §§ 404.1527, 416.927; see also Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  In general, an ALJ must accord special weight to a treating physician's opinion because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual."  Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted).  If a treating source's opinion on the issues of the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence in the case record, the ALJ must give it "controlling weight."  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

Where a treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons.  Lester, 81 F.3d at 830.  However, if the treating physician's opinion is contradicted by another doctor, such as an examining physician, the ALJ may reject the treating physician's opinion by providing specific, legitimate reasons, supported by substantial evidence in the record.  Lester, 81 F.3d at 830-31; see also Orn, 495 F.3d at 632; Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002).  Where a treating physician's opinion is contradicted by an examining professional's opinion, the Commissioner may resolve the conflict by relying on the examining physician's opinion if the examining physician's opinion is supported by different, independent clinical findings.  See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995); Orn, 495 F.3d at 632.  Similarly, to reject an uncontradicted opinion of an examining physician, an ALJ must provide clear and convincing reasons.  Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005).  If an examining physician's opinion is contradicted by another physician's opinion, an ALJ must provide specific and

1  legitimate reasons to reject it.  Id.  However, "[t]he opinion of a non-examining physician cannot

2  by itself constitute substantial evidence that justifies the rejection of the opinion of either an

3  examining physician or a treating physician"; such an opinion may serve as substantial

4  evidence only when it is consistent with and supported by other independent evidence in the

5  record.  Lester, 81 F.3d at 830-31; Morgan, 169 F.3d at 600.

6          2.    Analysis

7          The ALJ states, "I generally adopt Dr. Harar's opinion because it is consistent with the

8  overall evidence of record."  (AR 60.)  The ALJ expressly rejected Dr. Betts' opinion on

9  fibromyalgia as "contradicted by Dr. Harar's opinion."  (AR 60.)  Dr. Harar, however, is a non-

10 examining non-treating physician whose opinion cannot by itself constitute substantial evidence

11 for rejecting the opinion of a treating physician except "when the opinions are consistent with

12 independent clinical findings or other independent evidence in the record."  Thomas, 278 F.3d

13 at 957.

14         In this case, however, there are no "independent clinical findings" rejecting fibromyalgia.

15 Quite the contrary, there are repeated diagnoses of fibromyalgia in the record by Dr. Metyas,

16 Dr. Betts and VAMC doctors.  There is no contrary medical opinion evidence in the record

17 regarding Plaintiff's fibromyalgia other than the unexplained, check box conclusory opinion of

18 Dr. Harar.  State reviewing psychiatrist Dr. Tashjian completed a check box Mental RFC

19 Assessment which does not address fibromyalgia.  Dr. Harar's opinion of Plaintiff's

20 fibromyalgia, then, is not consistent with any "independent clinical findings."  Indeed, Dr. Harar's

21 opinion is inconsistent with all other medical evidence on fibromyalgia.  Dr. Harar's opinion,

22 moreover, fails to offer any explanation why she apparently rejected all other medical evidence

23 on fibromyalgia or why she did not accept the standard tender points test for diagnosing

24 fibromyalgia.

25         The Commissioner argues that Dr. Harar's opinion is consistent with the ALJ's adverse

26 credibility finding which is "independent evidence of record."  The ALJ did make an adverse

27 credibility determination in determining Plaintiff's RFC but never states whether Plaintiff has

28 fibromyalgia or not or what its severity is.  The ALJ's credibility determination, moreover, is

1   intertwined with the ALJ's rejection of the opinions of Dr. Metyas and Dr. Betts.  As noted in the

2   next section, the ALJ improperly rejected the fibromyalgia medical evidence, largely on the

3   basis of insufficient adverse credibility evidence.  Thus, Dr. Harar's opinion does not constitute

4   substantial evidence.

5         **D.     The ALJ Improperly Rejected**
            **The Fibromyalgia Evidence**

6

7         Dr. Betts diagnosed Plaintiff with fibromyalgia in 2009.  Because he was not a

8   rheumatologist, he referred Plaintiff to Dr. Metyas who on four occasions found pain in 18 of 18

9   tender points.  (AR 541, 595, 702, 694.)  VAMC physicians Dr. Sheybani, Dr. Schulz, and Dr.

10  Krasnova diagnosed fibromyalgia or accepted that diagnosis.  (AR 73, 120.)  Dr. Schulz

11  reported pain in 16 of 18 tender points.  (AR 120.)  None of these physicians indicated that

12  Plaintiff was faking or exaggerating his symptoms or questioned his credibility.  The ALJ did not

13  address Dr. Schulz' findings.  This is a significant amount of medical evidence to disregard,

14  particularly on credibility grounds.  The Court thinks it a stretch that Plaintiff could have

15  deceived all these physicians.

16        The ALJ gave "less weight" to Dr. Betts' opinions because his December 10, 2010,

17  assessment was not based on updated clinical evidence and came at a time when Dr. Betts did

18  not have a significant treating relationship with Claimant, and thus not well supported.  (AR 60.)

19  The ALJ's criticism of Dr. Betts' December 10, 2010, assessment is reasonable and the Court

20  will not second guess it, Rollins, 261 F.3d at 857, but it has no applicability to Dr. Betts' 2009

21  diagnosis when there was a significant treating relationship.  Dr. Betts' diagnosis was reaffirmed

22  by VAMC physicians in 2010 and thus cannot be disregarded, even if his own 2010 assessment

23  can.  Additionally, as already noted, the ALJ's reliance on Dr. Harar to reject Dr. Betts' opinions

24  (AR 60) was improper both because Dr. Harar's conclusory opinion lacks explanation and

25  because Dr. Harar did not treat or examine Plaintiff and her opinion does not constitute

26  substantial evidence.  Dr. Betts' 2009 diagnosis of fibromyalgia was improperly rejected or not

27  considered or addressed.

28

1    The ALJ also gave "less weight" to the opinions of Dr. Metyas, a rheumatologist.  (AR

2    60.)  The ALJ criticizes Dr. Metyas for lack of an extensive treating relationship, but on referral

3    Dr. Metyas saw Plaintiff four times, conducted lab tests to rule out other causes like Sjogren's

4    syndrome and found pain in 18 of 18 tender points on all four occasions.  The ALJ says that

5    Plaintiff's April 2010 visit was specifically for Social Security purposes (AR 60), but Dr. Metyas

6    also examined Plaintiff and found he had pain in 18 of 18 tender points (AR 702), the third time

7    he made that finding.  Dr. Metyas' consistent diagnosis over four visits cannot be discounted so

8    readily, particularly when Dr. Harar is not a rheumatologist and never treated or examined

9    Claimant.  Social Security regulations indicate that generally more weight is to be given to a

10   specialist on medical issues related to his or her specialty than to the opinion of a source who is

11   not a specialist.  20 C.F.R. § 404.1527(d)(5).

12   The ALJ notes that Dr. Metyas' notes make a mistake in stating Plaintiff's height (AR 61),

13   a minor mistake that obviously has little bearing on Dr. Metyas' fibromyalgia opinion.  More

14   concerning is Dr. Metyas' standing/walking restrictions in view of evidence Claimant had no gait

15   disturbance (AR 61), but again his criticism does not relate to or overcome Dr. Metyas' four

16   positive tender point examinations or Plaintiff's pain.

17   The ALJ found Dr. Metyas' April 7, 2010, and October 20, 2010, submissions not

18   "persuasive" because "he appears to have relied on the claimant's allegations without verifying

19   the veracity of the claimant's statements," "relied quite heavily on the subjective report of

20   symptoms and limitations provided by the claimant" and "seemed to accept uncritically as true

21   most, if not all, of what the claimant reported."  (AR 61.)  There are numerous problems with the

22   ALJ's finding.  First, the ALJ's finding is inaccurate and not supported by substantial evidence.

23   Dr. Metyas did lab tests to rule out other possible causes (AR 541) and four times found pain in

24   18 of 18 tender points on clinical examination.  Second, a fibromyalgia diagnosis necessarily is

25   based on the patient's reported subjective symptoms; there is no accepted laboratory test that

26   would verify the claimant's statements.  Id.  Third, the mere fact that Dr. Metyas considered and

27   reported Plaintiff's symptoms does not mean he accepted Plaintiff's symptoms uncritically.

28   Fourth, the ALJ's finding by its own terms is inapplicable to Dr. Metyas' October 2009 and

1   December 2009 visits.  Fifth, Dr. Metyas' diagnosis is supported by VAMC physicians whose

2   opinions the ALJ and the Commissioner never acknowledge or address.  There is too much

3   medical opinion evidence of fibromyalgia repeatedly and consistently documented in 2009 and

4   2010 to discount merely on the basis that it is based on Plaintiff's self-reported subjective

5   symptoms.  Again, none of the physicians even intimated that Plaintiff was exaggerating his

6   symptoms.

7             1.      Plaintiff's Credibility

8       The ALJ, however, found that, "as explained elsewhere in this decision, there exist good

9   reasons for questioning the reliability of the claimant's subjective complaints."  (AR 61.)  As the

10   Commissioner observes, even positive tender point findings can be undermined if based on

11   discredited subjective complaints.  Tonapetyan v. Halter, 242 F.3d 1144, 1148-49 (9th Cir.

12   2001), Morgan, 169 F.3d at 602, Andrews, 53 F.3d at 1043 ("[A]n opinion of disability premised

13   to a large extent upon claimant's own accounts of his symptoms and limitations may be

14   disregarded, once those complaints have themselves been properly discounted.").

15       Thus, the Court must consider the legal standard regarding the credibility of subjective

16   pain symptoms.  The test for deciding whether to accept a claimant's subjective symptom

17   testimony turns on whether the claimant produces medical evidence of an impairment that

18   reasonably could be expected to produce the pain or other symptoms alleged.  Bunnell, 947

19   F.2d at 346; see also Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998); Smolen v. Chater,

20   80 F.3d at 1281-82 esp. n.2.  The Commissioner may not discredit a claimant's testimony on

21   the severity of symptoms merely because they are unsupported by objective medical evidence.

22   Reddick, 157 F.3d at 722; Bunnell, 947 F.2d at 343, 345.  If the ALJ finds the claimant's pain

23   testimony not credible, the ALJ "must specifically make findings which support this conclusion."

24   Bunnell, 947 F.2d at 345.  The ALJ must set forth "findings sufficiently specific to permit the

25   court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."  Thomas, 278

26   F.3d at 958; see also Rollins v. Massanari, 261 F.3d 853, 856-57 (9th Cir. 2001); Bunnell, 947

27   F.2d at 345-46.  Unless there is evidence of malingering, the ALJ can reject the claimant's

28   testimony about the severity of a claimant's symptoms only by offering "specific, clear and

1    convincing reasons for doing so."  Smolen, 80 F.3d at 1283-84; see also Reddick, 157 F.3d at
2    722.  The ALJ must identify what testimony is not credible and what evidence discredits the
3    testimony.  Reddick, 157 F.3d at 722; Smolen, 80 F.3d at 1284.

4         In determining Plaintiff's RFC, the ALJ concluded that Plaintiff's medically determinable
5    impairments reasonably could be expected to cause his alleged symptoms.  (AR 56.)  The ALJ,
6    however, found that Plaintiff's statements regarding the intensity, persistence and limiting
7    effects of these symptoms were not credible to the extent inconsistent with the ALJ's RFC.  (AR
8    56.)  Because the ALJ did not make a finding of malingering, he was required to provide clear
9    and convincing reasons supported by substantial evidence to discount Plaintiff's credibility.
10   Smolen, 80 F.3d at 1283-84.  The ALJ failed to do so.

11        The ALJ offered the following reasons for discounting Plaintiff's credibility:
12             The claimant's credibility is poor.  Although the claimant complained of
13             constant pain that was at a level of eight with medications, from January
14             2010 to May 2010 the claimant did not appear to be in acute physiologic
15             distress (Exhibit 16F/2-11).  The claimant stated that he could sit at most 10
16             minutes.  However, I observed that the claimant was able to sit for 25
17             minutes at the hearing.  He testified he had hand shaking and squinting and
18             closing of eyes due to extreme pain.  However, these symptoms are not
19             noted prominently in the record.  During the hearing, the claimant did not
20             answer a number of questions in a straightforward manner.   Rather, he
21             qualified many answers and needed prompting before he answered a simple
22             yes or no question.  I infer from his behavior that he was not being entirely
23             credible.  Although the claimant has received treatment for the allegedly
24             disabling impairments, that treatment has been essentially routine and/or
25             conservative in nature.  He did not see doctors with the frequency expected
26             of someone claiming debility.  There is a contradiction between his
27             statement that he needed a cane for walking (Exhibit 8E) and evidence
28             demonstrating that he claimant had no gait disturbances (Exhibit 16F/11,

15

1    16F/4).  After considering the above factors, I conclude that the claimant is

2    not fully credible.

3  (AR 61-62.)

4        The ALJ first cites some VAMC progress notes that Claimant did not appear in "acute

5  physiologic distress," which is inconsistent with Claimant's pain allegations.  (AR 61, 635-44.)

6  This is an argument that Plaintiff's symptoms are inconsistent with the medical evidence, which

7  is a valid reason for discounting credibility as long as it is not the only reason for doing so.

8  Burch v. Barnhart, 400 F.3d 676, 680-81 (9th Cir. 2005); Thomas, 278 F.3d at 959.  In this

9  case, however, the very same VAMC progress notes reporting no acute physiologic distress

10  also reference chronic pain and poor sleep due to fibromyalgia, and prescribe medications and

11  therapy.  (AR 635-638, 640, 641, 643.)  Notwithstanding the report of no acute physiologic

12  distress, VAMC physicians maintained their diagnosis of fibromyalgia and even described

13  Plaintiff as a "reliable historian."  (AR 637.)  Looking at the medical record as a whole, Plaintiff's

14  symptoms are not inconsistent with the medical evidence; in fact, the contrary is true.  The

15  ALJ's finding therefore is not a clear and convincing reason for discounting Plaintiff's credibility.

16        The ALJ also found that Claimant's treatment has been "essentially routine and/or

17  conservative in nature."  (AR 61-62.)  Conservative treatment can be a valid basis for

18  discounting a claimant's testimony regarding the severity of his symptoms.  Parra, 481 F.3d at

19  750-51.  Here, however, Plaintiff received medications and was on a plan for physical therapy,

20  aqua therapy and yoga.  Fibromyalgia has no cure.  The ALJ simply states a conclusion that

21  Plaintiff's treatment has been conservative but does not state what additional treatment he

22  should have sought.  VAMC progress notes are frequent and extensive.  Conservative

23  treatment is neither a clear and convincing reason to discount Plaintiff's credibility nor

24  supported by substantial evidence.

25        The ALJ also found that Plaintiff made statements about not being able to sit for more

26  than 10 minutes that were inconsistent with other evidence in the record.  (AR 61.)  The ALJ

27  also noted a contradiction between Plaintiff's statement that he needed a cane yet was found to

28  have no gait disturbances.  These general credibility findings are reasonable and based on

1    the evidence but they are not related to nor do they overcome all the medical opinions that

2    Plaintiff had fibromyalgia and the numerous clinical examinations finding pain in more than 11

3    tender points.

4                                          * * *

5          The ALJ improperly considered the fibromyalgia evidence.  The ALJ's non-disability

6    decision is not supported by substantial evidence and not free of legal error.

7    **II.    THE ALJ PROPERLY DISCOUNTED THE OPINION
            OF PLAINTIFF'S TREATING PSYCHIATRIST**

8

9          Plaintiff contends that the ALJ improperly discounted the opinion of treating psychiatrist

10   Dr. Margarita Krasnova.  The Court disagrees.

11         Dr. Krasnova examined Plaintiff monthly from January 2009 to September 2010 and

12   diagnosed anxiety and depression.  (AR 58-59, 60.)  With medication, Claimant became more

13   stable with Global Assessment of Functioning ("GAF") scores of 65-70.  (AR 58-59.)  In

14   September 2010, Dr. Krasnova completed a psychiatric impairment questionnaire diagnosing

15   panic disorder, reporting a GAF of 51 and marked limitations in some mental abilities, and

16   opining that Claimant would miss more than 3 days work a month.  (AR 60.)

17         State reviewing psychiatrist R. Tashjian, M.D., reviewed the medical evidence through

18   February 2010 and opined that Plaintiff could perform simple repetitive tasks (AR 611-24), the

19   mental limitation adopted by the ALJ is his RFC.  (AR 56.)  Dr. Tashjian found that Claimant's

20   adjustment disorder resulted in mild limitations except for a moderate limitation in maintaining

21   concentration, persistence and pace.  (AR 60.)  The ALJ generally adopted Dr. Tashjian's

22   opinion because it is consistent with the overall evidence.  (AR 61.)  Dr. Tashjian's opinion is

23   substantial evidence because consistent with the bulk of Dr. Krasnova's findings.  Thomas, 278

24   F.3d at 957.

25         The ALJ discounted Dr. Krasnova's opinion because it is not consistent with her

26   progress notes.  (AR 61.)  An ALJ can reject a treating physician's assessment of limitations

27   when physician notes are inconsistent with that assessment.  Bayliss, 427 F.3d at 1216.  The

28   ALJ noted that for most of 2010 the Claimant's GAF was 65 but dropped to 51 in September

1  2010.  (AR 61.)  Yet there were numerous references that Claimant's mental condition was

2  relatively stable.  (AR 61.)  Thus, the ALJ concluded that Dr. Krasnova's opinion did not give an

3  accurate picture of his mental health for 12 consecutive months.  (AR 61.)

4       Although the facts could be interpreted differently, the ALJ's interpretation is reasonable

5  and based on substantial evidence.  Plaintiff obviously disagrees with the ALJ's interpretation of

6  the medical evidence but the ALJ is responsible for resolving conflicts in the medical evidence.

7  Andrews, 53 F.3d at 1039; Magallanes, 881 F.2d at 750.  Here, because the ALJ's

8  interpretation was reasonable and based on substantial evidence, it should not be second-

9  guessed.  Rollins v. Massanari, 261 F.3d at 857.

10  **ORDER**

11       IT IS HEREBY ORDERED that the decision of the Commissioner of Social Security is

12  REVERSED and REMANDED for further proceedings in accordance with this Memorandum

13  Opinion and Order and with law.

14  **LET JUDGMENT BE ENTERED ACCORDINGLY.**

15

16  DATED: October 31, 2012                */s/ John E. McDermott*

17                                JOHN E. MCDERMOTT

                        UNITED STATES MAGISTRATE JUDGE

18

19

20

21

22

23

24

25

26

27

28